J. M. HARRIS, *Appellant*, v. HARVEY DEFENBAUGH,
*Appellee.*

No. 16,604.

J. M. HARRIS, *Appellant*, v. HARVEY DEFENBAUGH,
*Appellee.*

No. 16,605.

SYLLABUS BY THE COURT.

1. PUBLICATION SERVICE—*Defendant Not Alive.*  In an action
   quieting title to lands a judgment obtained on service by pub-
   lication only is void where the action is not commenced until
   after the person named as defendant is dead.

2. —————— *Unknown Heirs—Order Authorizing Publication Serv-
   ice.*  Where an attempt is made to obtain service by publica-
   tion upon the unknown heirs or devisees of a defendant,
   under section 78 of the code (Gen. Stat. 1901, § 4512), with-
   out an order of the court authorizing the same, the service
   is void.

3. WILLS—*Nonresident—Record—Notice—Purchaser   in   Good
   Faith—Tax-deed Holder.*  A tax-deed holder is not within
   the protection of section 9827 of the General Statutes of 1909,
   which provides that the title of a purchaser in good faith,
   without knowledge of a will, derived from the heirs of any
   person who is not a resident here at the time of his death
   shall not be defeated by the production of the will unless the
   same shall be offered for record within two years of the final
   probate.  In order to bring himself within its protection he
   must be a purchaser in good faith and have acquired his title
   from the testator or the heirs or devisees of the testator.

4. LACHES—*Quieting Title—Plaintiff in Possession.*  Laches is

ordinarily no defense in an action to quiet title or remove a cloud where the plaintiff is in possession.

5. —— *Equitable Estoppel—Mere Lapse of Time Insufficient.* The doctrine of laches is founded to some extent upon the principles of equitable estoppel. Where, by reason of acquiescence or long lapse of time, there is a possible loss of testimony or increased difficulty of defense, the doctrine may be applied in the discretion of the court; but laches does not consist in mere lapse of time.

6. —— *Defendant without Equitable Rights.* The doctrine of laches is never invoked in aid of a party where the equities are not in his favor.

7. —— *Rights of Tax-deed Holder Not Equitable, but Statutory.* There are no equities in favor of a tax-deed holder as against the owner of land. The rights of a tax-title holder are purely statutory.

8. —— *Action to Annul Tax Deed—Holder Not in Adverse Possession.* Laches can not be imputed to the owner of land for failure to begin an action to annul a tax deed, where the tax-title holder is not in adverse possession.

9. —— *Quieting Title against Holder of Defective Tax Deed Less than Five Years Old.* Where the holder of the legal title to land brings an action to quiet his title, a defendant whose claim rests upon a defective tax deed less than five years old can not avail himself of the defense of laches on the ground that the plaintiff failed to pay the taxes, or to file his title papers for record or assert his ownership of the land by taking actual possession until after the defendant acquired his rights.

Appeal from Kearny district court; WILLIAM H. THOMPSON, judge. Opinion filed June 11, 1910. Reversed.

*J. M. Harris,* for the appellant.
*Arthur H. Shay,* for the appellee.

The opinion of the court was delivered by

PORTER, J.: The plaintiff brought separate actions to quiet title to two quarter sections of land in Kearny county. The court found generally for the defendant, and the plaintiff appeals. The cases, being alike on the

facts, were consolidated in this court and submitted together.

There is no controversy as to the facts. Mansfield Young and Ruth E. Harris entered upon the land .in 1892 and proved up on the same. In that year patents were issued, one to Mansfield Young and the other to Ruth E. Harris. In 1896 they sold the improvements, leaving the land vacant and unoccupied, and moved to Illinois, where they were married. Shortly thereafter Mansfield Young died leaving a will, wherein he devised all his property to his wife. In 1898 the wife died leaving a will, wherein all her property was devised to her sister and seven brothers, one of whom is the plaintiff, who afterward purchased the interests of the other devisees. The wills of Mansfield Young and Ruth E. Young were duly probated in Will county, Illinois, and on the 16th day of October, 1907, certified copies thereof were duly recorded in Kearny county, Kansas. The land at that time was still vacant and unoccupied.

The plaintiff, after filing his deeds and copies of the wills for record, paid the taxes on the land for 1907, and, on October 22, 1907, went upon the land and rented the same by written lease to one Morgan, a stock raiser, who has since used the land for grazing purposes. The plaintiff immediately thereafter brought these actions to quiet his title.

The defendant claims title through a warranty deed from one J. H. Robinson, who held a conveyance from F. C. Puckett, a tax-deed holder. Puckett obtained his tax deed in 1903, and shortly thereafter commenced a suit to quiet his title, making Mansfield Young and his unknown heirs and Mrs. Mansfield Young and Ruth E. Harris parties defendant. At the time he brought his action both Mansfield Young and Ruth E. Young were dead. He attempted to obtain service by publication, and, on the 23d day of June, 1903, a decree was rendered quieting his title. He afterward conveyed to Robinson, and Robinson conveyed to the defendant,.

Defenbaugh. The defendant in his answer set up the Puckett tax deed and the Puckett judgment. At the time these actions were brought the tax deed was less than five years old, and was defective on its face, for the reason that it purported to convey a large number of disconnected tracts of land and failed to state the amount for which each separate tract was conveyed. (*Gibson v. Kueffer,* 69 Kan. 534; *Worden v. Cole,* 74 Kan. 226; *Smith v. Land Co.,* ante, p. 539.)

The judgment quieting title in Puckett was void for want of jurisdiction. Mansfield Young and Ruth E. Young were both dead. No effort was made to obtain service upon the unknown heirs and devisees of the wife, but an attempt was made to obtain service upon the unknown heirs and devisees of Mansfield Young. The attempted service, however, was void for the reason that no order was made authorizing publication upon such unknown heirs or devisees, as required by section 78 of the code then in force. (Gen. Stat. 1901, § 4512.)

In his answer the defendant also claimed that the plaintiff could not recover because copies of the wills of Mansfield Young and Ruth E. Young were not filed for record in Kearny county until after the defendant had acquired his title. This defense is based upon section 9827 of the General Statutes of 1909 (Gen. Stat. 1868, ch. 117, § 50), which provides that the title of a purchaser in good faith, without knowledge of a will, derived from the heirs of any person not a resident here at the time of his or her death shall not be defeated by the production of the will unless the same shall be offered for record in this state within two years of the final probate. This statute, however, can not avail the defendant. In order to bring himself within its protection he must be a purchaser in good faith (*Markley v. Kramer,* 66 Kan. 664, 666), and must have acquired his title from the heirs of the testator. He does not claim in privity with the makers of the wills, but claims

title by being a purchaser in good faith, relying upon the Puckett judgment and tax deed.

The main contention of the defendant, and the proposition upon which the court apparently decided the issues in his favor, is that the plaintiff lost his rights to the land by his laches in failing to assert his title sooner. The answer is not set out in full in the abstract, but from the argument in the briefs the contention appears to be that the plaintiff is guilty of laches in failing to pay the taxes upon the land and neglecting to file for record his conveyances and copies of the wills.

We are unable to discover how the defense of laches can apply to the facts in this case. In the first place, laches is ordinarily no defense in an action to quiet title or to remove a cloud where the plaintiff is in possession. (32 Cyc. 1345; *Ruckman v. Cory,* 129 U. S. 387; *Waldron v. Harvey,* 54 W. Va. 608; *Beck Lumber Co. v. Rupp,* 188 Ill. 562; *Hyde v. Redding,* 74 Cal. 493.) In the last case cited it was said:

"And where a plaintiff has been in possession of land he can not be guilty of laches in the bringing of a suit to remove a cloud at any time before an action has been brought to disturb his possession, or to deprive him of any enjoyment of his right. (*Liebrand v. Otts,* 56 Cal. 248.)" (Page 500.)

(See, also, Hogg's Eq. Prin. § 299.)

There are also many decisions to the effect that where the title upon which a claimant to real estate bases his right to equity is a legal one, capable of being established at law, the doctrine of laches and stale claim does not apply, but his rights are barred only by adverse possession; and in such cases on general principles equity will follow the law on the question of the statute of limitations. (*Higgins Oil & Fuel Co. v. Snow,* 113 Fed. 433; *Penrose v. Doherty,* 70 Ark. 256; *Moss v. Berry,* 53 Tex. 632; *Williams v. Conger,* 49 Tex. 582.) In the last case cited it was said:

"But we know of no authority to warrant the court

in holding that the mere failure to pay taxes, or the laches or delay of the owner in bringing suit for the recovery of land to which he has a legal title, will defeat his action, where there has not been actual adverse possession for a sufficient length of time to support plea of limitation." (Page 602.)

But we need not rest our decision upon these grounds. The doctrine of laches is founded, to some extent at least, upon the principles of equitable estoppel. Where, by reason of acquiescence and long lapse of time, there is a possible loss of testimony or increased difficulty of defense, the doctrine may be applied in the discretion of the court; but laches does not consist in the mere lapse of time. (19 A. & E. Encycl. of L. 149.) In *Galliher v. Cadwell,* 145 U. S. 368, it was said:

"Laches does not, like limitation, grow out of the mere passage of time; but it is founded upon the inequity of permitting the claim to be enforced—an inequity founded upon some change in the condition or relations of the property or the parties." (Syllabus.)

In the present case no neglect or delay of the plaintiff nor of his predecessors in title could have caused any prejudice to the defendant or altered his condition. The defendant took his conveyance, not in reliance upon the alleged abandonment of the owners, but upon the strength of the tax deed and the judgment purporting to quiet title in Puckett. How, then, can it be said that the failure of the plaintiff to file for record copies of the wills and the conveyances under which he derives his title has affected the defendant's ability to make defense? The claim of title of the defendant is not derived in any way from the testators of the wills or the grantors in the plaintiff's deeds. A large number of cases are cited where laches is held to be a defense, but they all proceed upon the theory that not mere delay, but delay that works a disadvantage to others, must be shown before the doctrine can be invoked. Cases holding that where the plaintiff has slept on his rights and permitted the defendant to make valuable improve-

Harris v. Defenbaugh.

ments on the property or to make large expenditures in reliance on his title he will be barred by laches have no application to the facts here. The land was vacant and unoccupied until the plaintiff took possession. Not a dollar has been laid out in improvements or expended by the defendant in reliance upon the plaintiff's attitude, and the defendant is in no position to invoke the doctrine of laches because of any change or alteration in his condition.

Moreover, the doctrine of laches is never invoked in aid of a party where the equities are not in his favor. There are no equities in favor of a tax-deed holder as against an owner of land. His rights are purely statutory. There are, therefore, no equities in favor of the defendant. The judgment under which he claims is void for want of jurisdiction, and his title depends solely upon the tax deed. The latter, being less than five years old and defective on its face, carried with it no constructive possession of the land, and started no statute of limitations running against the owner. (*Taylor v. Miles,* 5 Kan. 498; *Paine v. Spratley,* 5 Kan. 525; *Hall's Heirs v. Dodge,* 18 Kan. 277.) How, then, could a court of equity hold the owner bound by acquiescence, predicated upon mere lapse of time, or for failure to record his title papers, or to take actual possession of the land, or for any or all the reasons suggested? The statute gives the owner five years from the recording of a tax deed within which to contest its validity, where it is valid upon its face; and where it is void on its face, and the tax-title holder is not in actual possession, no statute of limitations runs against an action to annul it. Laches is never imputable to the owner of land for failure to begin an action to annul a tax deed where the tax-title holder is not in adverse possession. (*Cook v. Lasher,* 73 Fed. 701; *State v. Sponaugle et al.,* 45 W. Va. 415; *United States v. Insley,* 130 U. S. 263.)

To say to the owner of vacant, unoccupied land that

an action brought to quiet his title within the statutory period of five years against one claiming under a tax deed is barred because the claim is stale is carrying the doctrine of laches further than any of the decided cases of which we are aware.   In Arizona, by statute, the scope of an action to quiet title is enlarged so as to permit a plaintiff to maintain it who is out of possession.   Compare the facts in the present case upon which the claim of laches is based with those in *Costello v. Muheim*, 9 Ariz. 422, where the defense was interposed, and where the court used this language:

"Furthermore, we concur with the appellant's contention that the facts, as they appear in this record, do not show him to be guilty of laches.   To hold, in an action to quiet title, that the plaintiff may not recover against a defendant who has been in possession for less than three years, for no other reason than that the plaintiff has failed to pay his taxes, or list his property for taxation, for a period of eleven years, while the defendant, holding a void tax deed to the property, has paid the taxes during the eleven years, and has, within three years, expended seven hundred and eighty dollars in improvements, extends the doctrine of laches to a degree not supported by any precedent cited to us. We are unwilling so to extend it.   Plaintiff is not precluded by laches from maintaining this suit, unless by reason of his course defendant has been misled to his injury, or the property has, at defendant's risk and expense, been greatly enhanced in value while plaintiff lay by awaiting the turn of events to assert his claim, or unless some other facts exist, not now disclosed in this record, showing inequity in the plaintiff's position."   (Page 430.)

The doctrine that one who has affirmatively, by words and conduct, assented to the claims of another is guilty of laches has no application to this case, because there were no circumstances which required the plaintiff to assert his rights.   The rule is thus stated in volume 16 of the Cyclopedia of Law and Procedure, at page 159:

"But acquiescence of plaintiff in a conflicting claim

Harris v. Defenbaugh.

can not be inferred by the court where no circumstances appear which call upon plaintiff for assertion of his rights."

No law required the plaintiff to record his deeds or to file for record certified copies of the wills under which he claims. So long as there was no innocent purchaser who derived his title from the heirs of the testators or from the testators themselves, the failure to file for record copies of the wills could prejudice no one; nor was the owner guilty of any laches in failing to take possession of the land. The owner of land may use it as he sees fit. He may take it into his actual possession, or, if it suit his purposes better to leave it unoccupied and vacant, he can do so without danger thereby of losing his title, unless some person obtains possession and retains it adversely for a length of time sufficient to bar the owner's rights. Nor is the owner under any obligation to record his title papers. The recording acts protect the rights of innocent purchasers. To the holder of a tax title, whether valid or invalid, the owner owes no duty to record his title papers, nor to assert his claims, nor to acknowledge ownership by taking the land into his actual possession.

In *Hunter v. Hodgson* (Tex. Civ. App. 1906), 95 S. W. 637, it was held that parties claiming under a void tax deed could not avail themselves of the defense of laches and stale demand, as against the holder of the legal title, upon facts very similar to those in the present case. The case was decided by the Texas civil court of appeals, and the supreme court refused to allow an appeal. It was held in that case, as reported in 95 S. W. 637:

"The rights of one having the legal title to land not in the adverse possession of another are not affected by his mere nonclaim for many years, or failure to pay taxes, or the payment of taxes by another claiming under a void deed, though these facts suggest that the

parties may have supposed that the deed disposed of the property." (Syllabus.)

Upon the facts the plaintiff was entitled to judgment quieting his title against the claims of the defendant, except a lien for taxes. The judgment is reversed and the cause remanded for further proceedings in accordance herewith.